JUDGE ROBERTSON
delivered the opinion op the oodrt:
To this action by the appellant for the tortious taking and conversion of his gray mare by the appellee, the latter answered that he took the horse, not in his private capacity, or for his own use, but as a captain in the Federal army, under the authority of the general government, and for the needful use of its army during the late civil war, and that it was so appropriated and used; and he thereupon and therein prayed for a translation of the case to the Federal court for Kentucky, according to the fifth section of the act of Congress of the 3d of March, 1863, in the following words: “ If any suit or prosecution, civil or criminal, has been or shall be commenced in any State court, against any officer, civil or military, or against any other person, for any arrest or imprisonment made, or other trespass or wrong done or committed, or any act omitted to be done, at any time during the present rebellion, by virtue or under color of any authority from, or exercised by or under the President of' the United States, or any act of Congress, and the defendant shall, at the time of entering his appearance in such court, file a petition stating the facts and verified by affidavit, for the removal of the cause for tidal at the next circuit court of the United States, to be holden in the district where the suit is pending, and offer good and sufficient surety for the filing in said court, on the first day of its next session, copies of such process and other proceedings against him, and also for his appearing in such court, it shall then be the duty of the State court to accept the surety and proceed-no further in the cause or prosecution; and such copies being filed as aforesaid in such court of the United States, the cause shall then proceed therein in the same manner as if it had been brought in said court by original process, what *352 ever may be the amount in dispute or the damages claimed, or whatever the citizenship of the parties, any former law to the contrary notwithstanding.”
The appellant, without objection, filed several counter affidavits, averring that the appellee, months before the trespass, had resigned his commission, and was a private citizen at that time, and that he said that he took the mare for his own use as a reprisal for horses which had been taken from him by guerrillas. But the circuit court, on the execution of the required bond, ordered the transfer of the case to the Federal court at Louisville; and, under the authority of a Kentucky statute, enacted February 16th, 1866, this appeal is prosecuted to reverse that judgment. •
In the opinion of this court the judgment is erroneous, and should be reversed, for two reasons.
1. Having admitted the counter affidavits without objection to their admissibility, and submitted his case on the facts presented by them and his answer, the appellee must abide the legal result of that presentation; and as thus exhibited, the facts show that his admitted act was wrongful spoliation, without any military or other legal excuse; and, consequently, his case being one of mere trespass, exclusively cognizable by the State courts, and not embraced by the foregoing provisions of the act of Congress, the Federal court could not constitutionally take any cognizance of it by translation or otherwise.
2. Waiving the affidavits as if irrelevant, the answer, unaffected by them, fails to show a case provided for or contemplated by -the said enactment. It does not allege that the mare was taken “ under color of any authority from, or exercised by or under the President of the United States, or any act of Congress,” nor state any “facts” conducing to show any authority, directly or indirectly, *353 from the President, nor that the appellant was a Confed- • erate belligerent, or an enemy of the United States, nor that, if the mare had even been under presidential authority, taken for the use of the Federal army, there was any > such emergency as justified the caption without prepayment of just compensation to the citizen of Kentucky who owned her. The statute assuming control over the State judiciary in cases in which it has acknowledged jurisdiction should be strictly construed; and we should presume that Congress did- not intend, by any of its provisions, to violate the Federal Constitution, and therefore the act should be so interpreted, in its intent and application, as to harmonize with the organic law • of the Union. But, according to either its letter or its spirit, it does not apply to such a case as the appellee’s answer defines, even according to a liberal construction of the facts pleaded in it.
To what extent this act, according to any consistent interpretation of it, can constitutionally operate, is a rather difficult and a very important question. The Federal judiciary can have no jurisdiction beyond that which is defined and delegated by the Federal Constitution; and, according to the true theory of our dual system of government, Congress can neither enlarge nor curtail that sphere of jurisdiction, as settled by an uniform series of authoritative adjudications.
The Federal Constitution confers on the Federal judiciary jurisdiction, original or appellate, in only two-classes of cases dependent on either the character of the cause or that of the parties; and, in defining the class depending on the cause, the Constitution confines it to “ all cases in law and equity arising under the Constitution, the laws of the United States, and treaties made or which, shall be made under their authority.” The laws of the *354 ■ United States embrace not only acts of Congress, but international and military law, in peace and in war; and, so far as these may authorize the President, as commander-in-chief or otherwise, to act, his order or authority may be controlling or justifying. But beyond this constitutional boundary, even his acts will be as void as the ultra-constitutional acts of Congress. An action for an act done under his constitutional order or authority may be a cause arising under the laws of the United States. But, beyond his constitutional power, his order or authority is void; and an action resulting from it is not a cause “ arising under the Constitution or laws of the United States,” and/consequently, as virtually adjudged in Mitchell vs. Harmony, 13 Howard, his order to take the property of a citizen for public use would not justify a taking without previous compensation, except under some pressing necessity not admitting of delay, and the judicial presumption would be that he made no such order. In failing to allege facts showing such necessity, as well as in failing to plead the President’s order or authority of any kind, the answer or petition in this case is essentially insufficient to authorize the translation of the ca&e to the Federal court, under the act of the 3d of March, 1863,, which is law so far as it applies to cases over which the Federal Constitution confers jurisdiction on the Federal, judiciary; but any interpretation of its application beyond this limit would make it a brutum fulmen, destitute of the vital power of law.
We are therefore of the opinion that this case was not legally transferable to the Federal court.
'Wherefore, the judgment is reversed, and the cause remanded, with instructions to overrule the application' and proceed with the trial of the cause.